*In re:*

ALFONSO RIVERA
VALDIVIESO

Investigation of
Professional Conduct

ORDER

San Juan, Puerto Rico, December 23, 1969

The question of attorney Alfonso Rivera Valdivieso having been considered, the Court concludes that there is no cause to file a complaint against the aforementioned attorney and, consequently, orders its dismissal.

It was so agreed by the Court and certified by the Clerk.

Mr. Chief Justice Negrón Fernández did not participate herein. Mr. Justice Blanco Lugo, Mr. Justice Ramírez Bages, and Mr. Justice Torres Rigual, dissented, for considering that there was cause to file a complaint.

(s) JOAQUÍN BERRÍOS
*Clerk*

—O—

Dissenting vote of MR. JUSTICE BLANCO LUGO, in which MR. JUSTICE RAMÍREZ BAGES and MR. JUSTICE TORRES RIGUAL, concur.

Canon 28 of the Canons of Professional Ethics which proscribes the stirring up of litigations, directly or indirectly, reads in part:

"It is unprofessional for a lawyer to volunteer advice to bring a lawsuit. . . . It is disreputable . . . seeking out those with claims for personal injuries or those having any other grounds of action in order to secure them as clients, or to employ

agents or runners for like purposes, or to pay or reward, directly or indirectly, those who bring or influence the bringing of such cases to his office or to remunerate policemen, court or prison officials, physicians, hospital *attachés* or others who may succeed, under the guise of giving disinterested friendly advice, in influencing the criminal, the sick and the injured, the ignorant or others, to seek his professional services. . . ."

In the English common law this practice was called barratry, Drinker, Legal Ethics 64, 210–273 (1953); Malcolm, Legal and Judicial Ethics 110. Its most familiar expression at the present time is the one known as "ambulance chasing." The term, used for the first time in 1906 by the Court of Appeals of New York in *In re Clark*, 77 N.E. 1, 5, comprises a conduct which, if generalized, would attempt against the high values of the professional relationship. Luther, *Legal Ethics: The Problem of Solicitation*, 44 A.B.A.J. 554 (1958); Comment in 25 U. Chi. L. Rev. 674 (1958). In essence, the practice involves (a) the existence of a direct or indirect inducement, to an individual, ordinarily a layman, which may be a flat fee, a contingent fee in the result of the litigation, or a straight salary;[1] (b) the attorney's knowledge, either directly or easily through the concurrent circumstances that the cases brought to him were obtained by solicitation; (c) the evidence to the effect that the incidents are frequent and not isolated. See, Serrano Geyls, *Los "Perseguidores de Ambulancias,"* 23 *Rev. C. Abo. P.R.* 305 (1963); Annotation, *"Ambulance chasing" or similar solicitation of personal injury cases as ground for disbarment, suspension, or other disciplinary action,* 67 A.L.R.2d 859 (1959); the interesting note which appears in 30 N.Y.U. L. Rev. 182–193. In Puerto Rico we have already

---

[1] The mere use of wage-earning investigators does not reveal the existence of this element of inducement. *Re Heirich*, 140 N.E.2d 825 (1957); *In re Sizer*, 267 S.W. 922 (1924); *In re McCullough*, 95 P.2d 13, 17 (Utah 1939); but see, *In re Mahan*, 239 N.Y. Supp. 392 (1930), in regard to the degree of evidence in this respect.

seen signs of the existence of this censurable practice, *In re Rivera*, 86 P.R.R. 87 (1962).

I consider that the report of the investigation performed by the Solicitor General in the instant case contains sufficient elements to warn us that we are before something more than a mere possibility of transgression of the above-copied canon, and that it is proper to fully elucidate the situation. For this determination, I can only require the degree of evidence which hurts the ethical sensibility of the unaware. It may not be amiss to reiterate that the purpose of disciplinary proceedings is not to punish an attorney in particular, but to protect the public and to maintain the integrity of the profession and of the courts. Fuster, *Los Cánones de Etica Profesional y la Buena Conducta Profesional*, 32 *Rev. Jur. U.P.R.* 661 (1963).

My preoccupation is that agreements such as this may presage a process of gradual erosion in the requirements to comply with the ethical rules and an unsuspected relaxation of the latter. *Cf. In re Lugo Bougal*, 95 P.R.R. 220 (1967); *In re Pérez Rodríguez*, 91 P.R.R. 211 (1964); and *In re Andino Elías*, 88 P.R.R. 655 (1963).

